UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
THERMO FISHER SCIENTIFIC INC.               )
                                            )
             Plaintiff,                     )
                                            )
v.                                          )   Civil Action No.
                                            )
KENNETH BERGER                              )
                                            )
             Defendant.                     )
_____ )

## COMPLAINT

Plaintiff, Thermo Fisher Scientific Inc. ("Thermo Fisher"), by and through Thermo Fisher's undersigned attorneys, and for its Complaint for a declaratory judgment and other relief against Defendant, Kenneth Berger ("Berger"), hereby states and alleges the following:

### Nature Of Action

1.  This action is based on the willful breach of a restrictive covenant agreement and certain stock option and restricted stock agreements, and sets forth claims against Berger for breach of contract, declaratory judgment, breach of the implied covenant of good faith and fair dealing, and unjust enrichment.

### Parties, Jurisdiction And Venue

2.  Thermo Fisher is a Delaware corporation with its principal place of business in Waltham, Massachusetts.  Thermo Fisher is engaged in the business of, among other things, manufacturing, developing and distributing scientific and diagnostic instruments, equipment, supplies, workstations and chemicals used by clinical and research laboratories, universities and other life and health sciences customers.

3. Berger is a citizen of the state of New Jersey.

4. Jurisdiction over this matter arises pursuant to 28 U.S.C. § 1332 (diversity of citizenship) and 28 U.S.C. § 1367 (supplemental jurisdiction). The amount in controversy exceeds $75,000, exclusive of interest and costs. Personal jurisdiction exists over Berger, as the claims in this case relate to contracts which Berger signed while an employee of Thermo Fisher, a company based in this District. During his employment, Berger regularly communicated with and received substantial assistance from Thermo Fisher's employees located in Massachusetts. Berger also regularly traveled to Massachusetts for various meetings and trainings at Thermo Fisher's headquarters.

5. Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b)(2), because Thermo Fisher is a resident of this District.

**Background**

6. At all relevant times up until on or about March 5, 2012, Berger was an employee of Thermo Fisher. On October 1, 2001, Berger began his employment with Thermo Electron Corporation ("Thermo Electron"), one of Thermo Fisher's predecessors, as President, Real Time Analytics. Berger eventually moved into the position of Senior Vice President and the President of the Specialty Diagnostics Group for Thermo Fisher on or about March 19, 2010.

7. Thermo Fisher has invested considerable time and resources to develop, train and retain its employees.

8. In his position as the President of the Specialty Diagnostics Group with Thermo Fisher, Berger had access to Thermo Fisher's confidential information, including information regarding its key employees. Such information included employees' compensation

arrangements, evaluations of their performance, and particular skills that were valuable to Thermo Fisher's operations.

### Berger's Non-Competition Agreement

9.  On or about November 9, 2006, in conjunction with the merger of Thermo Electron and Fisher Scientific International, Inc. ("Fisher Scientific") into Thermo Fisher, Berger entered into a Non-Competition Agreement with Thermo Fisher (the "Non-Competition Agreement"). A copy of the Non-Competition Agreement is attached hereto as <u>Exhibit A</u>.

10. In consideration for entering into the Non-Competition Agreement, Thermo Fisher continued to employ Berger with the new, merged entity, and granted him 55,500 stock options, pursuant to a stock option agreement. Thermo Fisher entered into the Non-Competition Agreement in exchange for Berger's promises as set forth in that Non-Competition Agreement, including his agreement to abide by certain restrictive covenants.

11. One of the provisions in the Non-Competition Agreement consists of a proscription against Berger hiring employees of Thermo Fisher following the end of his employment with Thermo Fisher. In particular, Section 2 of the Non-Competition Agreement states in relevant part ". . . for a period of twelve (12) months after termination of [Berger's] employment with [Thermo Fisher] for any reason, [Berger] will not: (i) employ, hire, solicit, induce or identify for employment or attempt to employ, hire, solicit, induce or identify for employment, directly or indirectly, any employee(s) of [Thermo Fisher] to leave his or her employment and become an employee, consultant or representative of any other entity including, but not limited to, [Berger's] new employer, if any . . ."

12. In Section 6 of the Non-Competition Agreement, Berger "acknowledges and agrees that if he breaches or threatens to breach, any portion of this Agreement, [Thermo Fisher]

shall be entitled to all other remedies that it may have: (i) to an injunction or other appropriate equitable relief to restrain any such breach without showing or proving any actual damage to [Thermo Fisher]; and (ii) to be relieved of any obligation to provide any further payment or benefits to [Berger] or [Berger's] dependents."

13.     In Section 7 of the Non-Competition Agreement, Berger "acknowledges and agrees that should it become necessary for [Thermo Fisher] to file suit to enforce the covenants contained herein, and any court of competent jurisdiction awards [Thermo Fisher] any damages and/or an injunction due to the acts of [Berger], then [Thermo Fisher] shall be entitled to recover its reasonable costs incurred in conducting the suit including, but not limited, reasonable attorneys' fees and expenses."

**Berger's Stock Agreements**

14.     At various points during his employment, Berger was issued stock options and restricted stock pursuant to written agreements with Thermo Fisher. Certain of the stock options and restricted stock Thermo Fisher provided to Berger were expressly contingent upon his continuing compliance with the conditions set forth in the applicable stock option and restricted stock agreements (the "Stock Agreements"), including the condition that Berger comply with the restrictive covenants set forth in the Non-Competition Agreement. Specifically, Berger was issued stock options contingent upon his compliance with the Non-Competition Agreement on November 9, 2006, February 26, 2009, March 5, 2010, May 20, 2010, and February 23, 2011. In addition, Berger was issued restricted stock contingent upon his compliance with the Non-Competition Agreement on March 5, 2010, May 20, 2010, and February 23, 2011. In total, in the twelve months prior to Berger's breach of the Non-Competition Agreement, the value realized by Berger from the exercise and sale of the stock options and the sale of the restricted

4

stock that Thermo Fisher provided to Berger contingent upon his compliance with the Non-Competition Agreement is in excess of $1.5 million.

15. When Berger accepted these stock options and the restricted stock, he understood that the options and restricted stock he was being provided by Thermo Fisher were contingent upon his continued compliance with the conditions set forth in the Stock Agreements.

16. Thermo Fisher would not have issued the stock options or restricted stock to Berger unless he agreed to the terms of the Stock Agreements. Thermo Fisher grants such stock options and restricted stock in part in order to provide further incentive for its employees and former employees to comply with their respective restrictive covenant agreements with Thermo Fisher.

17. If Berger chose not to comply with the provisions in the Stock Agreements, then he could be obligated to return certain options and restricted stock to Thermo Fisher. In addition, in the event of a breach of the Stock Agreements by Berger that occurred after Berger had already exercised certain stock options and sold his shares, or had already sold restricted stock, then he could be obligated to pay back to Thermo Fisher the proceeds from the sale of those shares.

18. Alternatively, Berger had the option to comply with the conditions in the Stock Agreements and keep the stock options, restricted stock, and proceeds from any sales thereof.

19. In particular, each of the Stock Agreements pursuant to which Berger was issued stock options or restricted stock by Thermo Fisher contained identical or similar language as the following:

For Stock Options -

> Restrictive Covenants. If the Participant engages in any conduct in breach of any noncompetition, nonsolicitation or confidentiality obligations to the Company or

any Subsidiary under any agreement, policy or plan of the Company or any Subsidiary, then such conduct shall also be deemed to be a breach of the terms of the Plan and this Agreement. Upon such a breach, this Option shall be cancelled and, to the extent some or all of this Option was exercised within a period of 12 months prior to such breach, the Participant shall be required to forfeit to the Company, upon demand, any cash or Shares acquired by the Participant upon such exercise or sale.

For Restricted Stock -

Restrictive Covenants. If the Participant engages in any conduct in breach of any noncompetition, nonsolicitation or confidentiality obligations to the Company under any agreement, policy or plan of the Company, then such conduct shall also be deemed to be a breach of the terms of the Plan and this Agreement. Upon such a breach, this [Restricted Stock] shall be cancelled and, to the extent some or all of this [Restricted Stock] vested within a period of 12 months prior to such breach, the Participant shall be required to forfeit to the Company, upon demand, any Shares acquired by the Participant upon such vesting or cash acquired upon sale.

**Berger's Conduct Subsequent To His Employment With Thermo Fisher**

20. On or about March 5, 2012, Berger voluntarily resigned from his employment at Thermo Fisher. Upon information and belief, immediately after leaving his employment with Thermo Fisher, Berger began working as the CEO of ConvaTec, which develops and markets medical technologies in connection with ostomy care, wound therapeutics, continence and critical care, and infusion devices.

21. Approximately one month after Berger's voluntary resignation, Thermo Fisher's Vice President of Human Resources for the Laboratory Products Group, Joseph A. Baiunco, informed Thermo Fisher that he planned on joining Berger's new employer, ConvaTec. At that time, Thermo Fisher reminded Mr. Baiunco that Berger was not able to hire Thermo Fisher employees for one year following the end of his employment with Thermo Fisher. Mr. Baiunco asked Thermo Fisher to "waive" Berger's prohibition against hiring Thermo Fisher employees, however Thermo Fisher denied Mr. Baiunco's request.

22. Thereafter, Mr. Baiunco submitted his resignation, effective May 9, 2012. Upon information and belief and although Thermo Fisher was not aware at the time, following Mr. Baiunco's resignation from Thermo Fisher, he immediately began working at ConvaTec as its Senior Vice President of Human Resources. Upon information and belief, in that role Mr. Baiunco is ultimately responsible for all hiring decisions and employee relations issues at ConvaTec.

23. Prior to their respective resignations from employment, Berger and Mr. Baiunco had worked together at Thermo Fisher.

24. Based on the timing of Mr. Baiunco's defection to ConvaTec, which came on the heels of Berger's resignation from Thermo Fisher and assumption of the CEO position at ConvaTec, the significant role Mr. Baiunco has assumed at ConvaTec, and the fact that Berger and Mr. Baiunco were colleagues for an extended period of time while employed by Thermo Fisher, it is evident that Berger was involved in the hiring of Mr. Baiunco at ConvaTec and likely actively solicited Mr. Baiunco to join Berger at ConvaTec.

25. Berger's solicitation and hiring of Mr. Baiunco violates Section 2 of Berger's Non-Competition Agreement with Thermo Fisher. As a result of such violation, any stock options that were exercised by Berger within the 12 months preceding Berger's breach, any restricted stock that vested within the 12 months preceding Berger's breach, and any cash resulting from the sale of such exercised options or restricted stock, must all be forfeited by Berger to Thermo Fisher.

26. In addition, per Section 6 of the Non-Competition Agreement, Thermo Fisher is relieved "of any obligation to provide any further payment or benefits to [Berger] or [Berger's] dependents" due to Berger's violation of the Non-Competition Agreement. As a result, Thermo

Fisher is relieved from any obligation it may otherwise have had to provide any further payments or benefits to Berger.

### **Thermo Fisher's Attempts To Remind Berger Of His Contractual Obligations**

27. In mid-April, Mr. Baiunco informed Thermo Fisher that he was planning to work at ConvaTec. As a result, Thermo Fisher's Senior Vice President, General Counsel and Secretary, Seth H. Hoogasian, and Senior Vice President of Human Resources, Elizabeth Bolgiano, attempted to reach Berger by telephone and e-mail to discuss his continuing obligations pursuant to the Non-Competition Agreement, which prohibit him from hiring Thermo Fisher's employees for a period of twelve months following the end of his employment. Mr. Hoogasian and Ms. Bolgiano left voice messages for Berger, but Berger failed to return their calls. Berger likewise failed to respond to Mr. Hoogasian's e-mail message.

28. Accordingly, Mr. Hoogasian wrote a letter dated April 27, 2012 to Berger. In that letter, Mr. Hoogasian reminded Berger of his obligations pursuant to Section 2 of the Non-Competition Agreement, including specifically the proscription against hiring Thermo Fisher employees for a period of 12 months following the end of his employment. In the letter, Mr. Hoogasian also specifically indicated that if Mr. Baiunco became affiliated with ConvaTec, then that would constitute a breach of Berger's Non-Competition Agreement. Mr. Hoogasian also noted that Berger's stock option and restricted stock agreements with Thermo Fisher included provisions in the event of a breach of the restrictive covenants in the Non-Competition Agreement, which would entitle Thermo Fisher to recover shares vested and proceeds from shares sold in the last 12 months.

29. In response to Mr. Hoogasian's April 27, 2012 letter to Berger, the Senior Vice President and General Counsel for ConvaTec, Anthony P. Tinari, sent a letter to Mr. Hoogasian.

8

In that letter, dated May 1, 2012, Mr. Tinari, advised that Berger is "well familiar with his continuing obligations to his former employer, Thermo Fisher, and in particular with his undertakings pursuant to the Noncompetition Agreement ('Agreement') of November 9, 2006. Your assertions to the contrary notwithstanding, please be assured that neither Ken nor ConvaTec have any intention to engage in conduct which would be prohibited by the terms of that Agreement."

30. Based on the representations in Mr. Tinari's letter, Thermo Fisher reasonably believed that Berger was complying with the restrictive covenants he had agreed to in his Non-Competition Agreement, including the proscription on hiring Thermo Fisher employees during the twelve month period after the end of Berger's employment. In particular, Thermo Fisher reasonably believed that ConvaTec would not be hiring Mr. Baiunco, as such a hiring would violate the Non-Competition Agreement.

31. On or about May 25, 2012, Berger's personal attorney, Brian Kaplan, called and spoke with Mr. Hoogasian. During that conversation, Mr. Kaplan indicated that Berger's position was that the hiring of Mr. Baiunco was not prohibited by the Non-Competition Agreement, because the restrictions only applied to current Thermo Fisher employees and Mr. Baiunco was now a former employee of Thermo Fisher. At no point in time did Mr. Kaplan indicate that Mr. Baiunco was already working for ConvaTec. In a letter from Mr. Kaplan dated June 4, 2012, in which Mr. Kaplan purported to reiterate his discussion with Mr. Hoogasian regarding his client's position, Mr. Kaplan stated "we firmly believe that there is no contractual, legal or other impediment to Mr. Baiunco becoming employed by ConvaTec, should he wish to do so." Mr. Kaplan further stated in the letter that he had reached out to Thermo Fisher "to

9

ensure that Mr. Berger's former Thermo Fisher colleagues know of his ongoing respect for his former employer, as well as his commitment to both the letter and spirit of the Agreement."

32. Thermo Fisher continued to reasonably believe that Berger was complying with the restrictive covenants he had agreed to in his Non-Competition Agreement, including the proscription on hiring Thermo Fisher employees during the twelve month period after the end of Berger's employment. In particular, Thermo Fisher reasonably believed that ConvaTec had not hired Mr. Baiunco.

33. In early June 2012, Thermo Fisher discovered that Mr. Baiunco had been hired by ConvaTec and was working as its Senior Vice President of Human Resources. This discovery was made as a result of a review of ConvaTec's website, which includes a list of ConvaTec's "Leadership Team." That list includes both Berger and Mr. Baiunco. Mr. Baiunco's biography on the ConvaTec website also incorrectly identifies his former position at Thermo Fisher as the Global Vice President of Human Resources for Thermo Fisher, a position which he did not hold.

## COUNT I
## Breach of the Non-Competition Agreement

34. Thermo Fisher realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 33 above as though fully set forth herein.

35. Thermo Fisher provided Berger with valuable consideration in exchange for the commitments he made in the Non-Competition Agreement, including continued employment and certain stock options.

36. Thermo Fisher duly performed all of its obligations pursuant to the Non-Competition Agreement.

37. Periodically throughout Berger's employment with Thermo Fisher, it provided Berger with additional stock options and restricted stock pursuant to the Stock Agreements,

which made such option and stock issues contingent and dependent upon Berger's continued compliance with the restrictive covenants set forth in the Non-Competition Agreement.

38. Berger's conduct, including but not limited to his solicitation and hiring of a Thermo Fisher employee during the restricted twelve month period following the end of Berger's employment with Thermo Fisher, constitutes a material breach of the Non-Competition Agreement, including the restrictive covenants contained therein.

39. As a result of Berger's breach of the Non-Competition Agreement, Berger is liable to Thermo Fisher for breach of contract. Thermo Fisher has suffered, and will continue to suffer, substantial damages to its business as a result of Berger's breach, which will be further determined according to proof. At a minimum, as a result of Berger's breach of the Non-Competition Agreement, Thermo Fisher is relieved from any obligation it may otherwise have had to make any payments to Berger.

## COUNT II
## Breach of the Stock Agreements

40. Thermo Fisher realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 39 above as though fully set forth herein.

41. Thermo Fisher provided Berger with valuable consideration in exchange for the commitments Berger made in the Stock Agreements.

42. Pursuant to the Stock Agreements, if Berger engaged in conduct that breaches his obligations pursuant to the Non-Competition Agreement, then such conduct shall also be deemed a breach of the terms of the Stock Agreements.

43. Berger's conduct, including but not limited to his solicitation and hiring of a Thermo Fisher employee during the restricted twelve month period following the end of Berger's employment with Thermo Fisher, constitutes a material breach of the Non-Competition

Agreement, including the restrictive covenants contained therein. Accordingly, such conduct also constitutes a breach of the Stock Agreements.

44. As a result of Berger's breach of the Stock Agreements, Thermo Fisher has suffered damages to its business, which will be further determined according to proof. Further and pursuant to the Stock Agreements, as a result of Berger's breach, Berger must forfeit any shares or cash proceeds resulting from the sale of shares derived from exercised stock options or restricted stock that vested within 12 months of the date of Berger's breach of the Non-Competition Agreement.

## COUNT III
## Declaratory Judgment

45. Thermo Fisher realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 44 above as though fully set forth herein.

46. This Court has jurisdiction to hear a declaratory judgment claim pursuant to 28 U.S.C. § 2201.

47. An actual controversy exists between the parties as to their respective rights and obligations with respect to the Stock Agreements.

48. Specifically, the controversy relates to the parties' rights and obligations following a breach by Berger of the Stock Agreements with respect to the stock options and restricted stock provided to Berger during his employment with Thermo Fisher.

49. The Stock Agreements expressly provide that certain actions shall be taken by Thermo Fisher and Berger in the event that Berger breaches the restrictive covenants in the Non-Competition Agreement. In particular, Berger must forfeit any shares or cash proceeds resulting from the sale of shares derived from exercised stock options or restricted stock that vested within 12 months of the date of Berger's breach of the Non-Competition Agreement.

50.     Thermo Fisher seeks a declaration that the Stock Agreements are enforceable, that Berger has breached the Non-Competition Agreement, and that Berger must forfeit any shares or cash proceeds resulting from the sale of shares derived from exercised stock options or restricted stock that vested within 12 months of the date of Berger's breach of the Non-Competition Agreement.

## COUNT IV
### Breach of Implied Covenant of Good Faith and Fair Dealing

51.     Thermo Fisher realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 50 above as though fully set forth herein.

52.     An implied covenant of good faith and fair dealing existed with respect to the Non-Competition Agreement and Stock Agreements.

53.     Berger's actions in soliciting and hiring Mr. Baiunco to work for ConvaTec were not faithful to the intended and agreed expectations of the parties in their performance pursuant to the Non-Competition Agreement and Stock Agreements.

54.     Berger's actions unlawfully deprived Thermo Fisher of the benefits of the Non-Competition and Stock Agreements that it has with Berger.

55.     Berger's actions, which violated the Non-Competition Agreement, after Berger accepted the benefits of the Non-Competition Agreement and Stock Agreements, violate the implied covenant of good faith and fair dealing that existed with respect to those Agreements.

56.     As a result of Berger's breach of the implied covenant of good faith and fair dealing with respect to the Non-Competition Agreement and Stock Agreements, Thermo Fisher has suffered substantial damages, including but not limited to the compensation, stock options, restricted stock and other benefits that it provided to Berger with the expectation that he would remain faithful to the obligations set forth in those Agreements.

## COUNT V
### Unjust Enrichment

57. Thermo Fisher realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 56 above as though fully set forth herein.

58. Thermo Fisher conferred benefits upon Berger in the form of stock options, restricted stock and other compensation.

59. Berger was aware that Thermo Fisher conferred such benefits upon Berger with the expectation that he would comply with the restrictive covenants set forth in the Non-Competition Agreement.

60. As a result of Berger's violation of the restrictive covenants set forth in the Non-Competition Agreement and Berger's retention of the benefits conferred upon him by Thermo Fisher, he has been unjustly enriched. As a result, Berger should be ordered to forfeit to Thermo Fisher any stock options or restricted shares provided to him that he has not yet sold and to repay Thermo Fisher the proceeds from the sale of any stock which he has already sold.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, **THERMO FISHER SCIENTIFIC INC.**, respectfully requests judgment in its favor and against Defendant, **KENNETH BERGER**, as follows:

1. That the Court enter judgment against Berger that he breached the Non-Competition Agreement with Thermo Fisher and the restrictive covenants contained therein, and that Berger also breached the Stock Agreements;

2. That the Court enter a declaratory judgment that the Stock Agreements are enforceable, and that, as a result of Berger's breach of the Non-Competition Agreement and Stock Agreements, Berger must forfeit any shares or cash proceeds resulting from the sale of shares derived from exercised stock options or restricted stock that vested within 12 months of the date of Berger's breach of the Non-Competition Agreement and Stock Agreements.

3. That the Court award Thermo Fisher compensatory damages arising out of Berger's unlawful conduct alleged herein;

4. That the Court enter an injunction prohibiting Berger from violating the Non-Competition Agreement.

5. That the Court enter an Order expressly relieving Thermo Fisher from any obligation it may have otherwise had to make any payments to Berger.

6. That the Court order Berger to forfeit to Thermo Fisher any shares or cash proceeds resulting from the sale of shares derived from exercised stock options or restricted stock that vested within 12 months of the date of Berger's breach of the Non-Competition Agreement and Stock Agreements.

7. That the Court grant Thermo Fisher such additional relief as is just and proper, including, but not limited to, its attorneys' fees and costs incurred in pursuing this suit.

        Respectfully submitted,

        THERMO FISHER SCIENTIFIC INC.,

        By its attorneys,

        /s/ Erik J. Winton
        Erik J. Winton, BBO #600743
        wintone@jacksonlewis.com
        Allan N. MacLean, BBO #664396
        macleana@jacksonlewis.com
        Brian M. Childs, BBO #662594
        brian.childs@jacksonlewis.com
        JACKSON LEWIS LLP
        75 Park Plaza
        Boston, MA  02116
        (617) 367-0025

Dated:  June 15, 2012

4849-2556-5199, v.  1