UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| THERMO FISHER SCIENTIFIC INC.<br><br>Plaintiff,<br><br>v.<br><br>KENNETH BERGER<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:12-cv-11070-RGS<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF JOHN PICCIONE

I, John Piccione, on oath, depose and state as follows:

1. I am a resident of Weston, Massachusetts, where I have lived for the past 20 years.

2. I am presently the Chief Counsel – Employment and Chief Counsel – Mergers & Acquisitions for Thermo Fisher Scientific Inc. ("Thermo Fisher"), which is headquartered in Waltham, Massachusetts. I have been employed by Thermo Fisher since 1998 and have been in my present position with Thermo Fisher since November 2006. My responsibilities include overseeing and managing the legal aspects of Thermo Fisher's acquisitions and divestitures and employment matters.

3. I have personal knowledge regarding the events described in this declaration.

4. In November 2006, Thermo Electron Corporation ("Thermo Electron") merged with Fisher Scientific International Inc. ("Fisher Scientific") to form the merged entity, Thermo Fisher. Prior to this merger, Thermo Electron was headquartered in Waltham, Massachusetts.

5. In October 2001, the Plaintiff in this matter, Kenneth Berger, became employed with Thermo Electron.

6.      During his employment with Thermo Fisher, Berger attended training in Massachusetts. In 2003, Berger participated in two weeks of leadership training with other Thermo Fisher executives at Babson College in Wellesley, Massachusetts.

7.      From March 2010 until April 2011, Berger was responsible in his role as President of the Specialty Diagnostics Group for overseeing Athena Diagnostics Inc. ("Athena"), one of Thermo Fisher's larger subsidiaries located in Massachusetts. Berger routinely communicated with the General Manager of Athena, who was located in Massachusetts, and to whom approximately 300 Massachusetts-based Thermo Fisher employees reported. Berger directly supervised the Athena General Manager and was ultimately responsible for the approximately 300 employees located in Massachusetts who reported to the General Manager. Athena was a multi-million dollar business that was operated by Thermo Fisher until April 2011, when it was sold for approximately $740 million. Athena had gross revenues in 2010 of approximately $110 million.

8.       In November 2006, Berger entered into a Non-Competition Agreement with Thermo Fisher. After executing the Non-Competition Agreement, Berger sent the signed Non-Competition Agreement by Federal Express to Thermo Fisher's headquarters in Massachusetts. Thermo Fisher executed the Non-Competition Agreement in Massachusetts.

9.      Before signing the Non-Competition Agreement, Berger hired legal counsel, Wilson Sonsini Goodrich & Rosati PC, to assist him in reviewing the Non-Competition Agreement. Berger's counsel exchanged emails with Thermo Fisher's counsel in Massachusetts regarding Berger's consideration of the Non-Competition Agreement. In particular, Berger's counsel sent an email dated November 27, 2006 to my attention as counsel for Thermo Fisher. At the time, I was located (as I am now) in Massachusetts. In that email, Berger's counsel

sought clarification regarding various issues in connection with the Non-Competition Agreement, including whether Berger's receipt of 55,500 stock options was contingent upon him signing the Non-Competition Agreement. The following day (November 28, 2006), I responded to Berger's counsel on behalf of Thermo Fisher and confirmed that Berger's receipt of such stock options was, in fact, contingent upon him signing the Non-Competition Agreement. On November 29, 2006, Berger's counsel advised Thermo Fisher via email that Berger would not be signing the Non-Competition Agreement. This email exchange is attached hereto as Exhibit A. Subsequently, Berger apparently reconsidered this position and signed the Non-Competition Agreement.

10. Thermo Fisher reimbursed Berger for his legal expenses in connection with his consultation of counsel regarding his consideration of the Non-Competition Agreement. A copy of the legal bill provided to Thermo Fisher by Berger in order to seek reimbursement for his legal costs of $7,040 in connection with his consideration and review of the Non-Competition Agreement is attached hereto as Exhibit B. The bill attached as Exhibit B, includes an entry for time spent by his counsel researching Massachusetts law regarding non-compete agreements.

11. At various points during his employment, Thermo Fisher issued Berger stock options and restricted stock pursuant to written agreements (the "Stock Agreements"). Copies of certain of those Stock Agreements are attached hereto as Exhibit C.

12. I have reviewed Thermo Fisher's records regarding the vesting and exercise of stock options and restricted stock by Berger. In the twelve months prior to May 2012, Berger realized taxable income of more than $1.5 million from the exercise and sale of the stock options and the vesting of restricted stock awarded to Berger by Thermo Fisher. On March 5, 2012, Berger exercised 65,275 stock options and realized taxable income of $659,505.59, and received

2,300 shares of restricted stock for which he realized $130,088 in taxable income. On March 5, 2010, Thermo Fisher had awarded Berger 46,400 stock options and 6,900 restricted stock units. Pursuant to the respective vesting schedules set forth in the Stock Agreements, a portion of them could be exercised (1/4 annually for stock options) or vested (1/3 annually for restricted stock) on an annual basis thereafter. See Exhibit C. Accordingly, on March 5, 2012, 11,600 stock options and 2,300 restricted stock units from these March 5, 2010 grants became available to Berger to "cash out" for the first time, as he had remained continuously employed by Thermo Fisher and appeared to have otherwise complied with the Stock Agreements to that date. Berger also exercised 30,300 stock options in April 2011 (realizing $708,390), 2,300 restricted stock units on March 5, 2011 (realizing $131,146), 25 restricted stock units on May 20, 2011 (realizing $1,629.50), and 145 restricted stock units on February 23, 2011 (realizing $8,137.40).

13. Several of Thermo Fisher's employees who may be witnesses in this action on behalf of Thermo Fisher reside in Massachusetts, including but not limited to, myself, Elizabeth Bolgiano, and Marc Casper.

14. I was involved in the communications with Berger and Berger's counsel regarding his consideration and execution of the Non-Competition Agreement in November 2006.

15. Ms. Bolgiano is the Senior Vice President, Human Resources for Thermo Fisher, and is located in Massachusetts. Ms. Bolgiano communicated with Berger regarding the termination of his employment and his continuing obligations pursuant to the Non-Competition Agreement. Ms. Bolgiano also signed on behalf of Thermo Fisher certain of the Stock Agreements that are at issue in this matter. In addition, Ms. Bolgiano was the supervisor to Joseph Biaunco (the former Thermo Fisher employee whom Thermo Fisher alleges Berger hired

in violation of the Non-Competition Agreement) and can testify regarding her communications with Mr. Biaunco about his plan to work at Berger's new employer, Convatec, while Mr. Biaunco was still employed by Thermo Fisher.

16. Mr. Casper is Thermo Fisher's CEO and is also located in Massachusetts. Mr. Casper communicated with Berger throughout his employment and is familiar with Berger's responsibilities as an executive employee of Thermo Fisher.

17. In addition, the assistants of Ms. Bolgiano, Mr. Casper and myself may be in a position to provide evidence in this matter regarding the provision of Stock Agreements to Berger, and the scheduling of conference calls, meetings, and trainings which Berger attended throughout his employment with Thermo Fisher. These assistants are all located in Massachusetts.

18. Finally, relevant documents in connection with this matter, including the Non-Competition Agreement, the Stock Agreements, communications regarding the Non-Competition Agreement and Stock Agreements, and Berger's personnel documents, are all located in Massachusetts.

Signed under the pains and penalties of perjury this 12th day of October, 2012

/s/ John Piccione_____
John Piccione

## CERTIFICATE OF SERVICE

This hereby certifies that on this 12th day of October 2012, this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

/s/ Allan N. MacLean
Jackson Lewis LLP

4820-4077-1601, v. 1